[Cite as *Becraft v. Snyder*, 2025-Ohio-2164.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| JEREMY BECRAFT | : | |
| | : | C.A. No. 2025-CA-10 |
| Appellant | : | |
| | : | Trial Court Case No. 2012 JUV 0057 |
| v. | : | |
| | : | (Appeal from Common Pleas Court- |
| JESSICA SNYDER (fna TAYLOR) | : | Juvenile Division) |
| | : | |
| Appellee | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on June 20, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

[[Applied Signature]]
CHRISTOPHER B. EPLEY, PRESIDING JUDGE

[[Applied Signature 2]]
MARY K. HUFFMAN, JUDGE

[[Applied Signature 3]]
ROBERT G. HANSEMAN, JUDGE

**OPINION**
CLARK C.A. No. 2025-CA-10


TODD D. SEVERT & BLUE T. SULLIVAN, Attorneys for Appellant
NICOLE RUTTER-HIRTH, Attorney for Appellee


HUFFMAN, J.

{¶ 1} Jeremy Becraft appeals from a judgment of the Clark County Juvenile Court, which terminated a shared parenting decree between him and Jessica Snyder and designating Snyder the legal custodian and residential parent of the parties' two minor children. For the following reasons, the judgment of the juvenile court will be affirmed.

**Facts and Procedural History**

{¶ 2} In 2012, the juvenile court granted a shared parenting decree proposed by the parties with respect to their older child, who had been born in 2011. In 2013, the parties had a second child, and the matter came back before the court on Snyder's request for reallocation of parental rights and Becraft's motion to terminate shared parenting and for legal custody of the children. In 2014, the court adopted a proposed shared parenting plan submitted by Becraft with respect to both children, with modifications.

{¶ 3} On June 13, 2023, Snyder filed a motion to modify parenting time, to reallocate parental rights, and to modify the support orders. Snyder included an affidavit in which she stated that Becraft had acknowledged abusing alcohol and driving the children while intoxicated. According to Snyder, Becraft had recently been arrested for violating a protection order obtained by his wife and for burglary and stalking. The court suspended Becraft's parenting time the same day, until further order.

{¶ 4} The hearing on the matter was continued multiple times at Becraft's request due

to his pending charges and trial. After the guardian ad litem (GAL) filed a notice indicating that Becraft had failed to pay for his services, an agreed order was filed in October 2024; pursuant to the order, the GAL was reappointed, and the parties agreed to share the expenses for an updated report. The court ordered Becraft to obtain and use a Soberlink remote alcohol monitoring device for six months. Additional issues subsequently arose with respect to Becraft's failure to pay for the GAL's services.

{¶ 5} Becraft failed to appear at the final hearing on January 22, 2025. His attorney orally moved to withdraw, and the request was granted. After the hearing, the court terminated the shared parenting plan and designated Snyder the legal custodian and residential parent of the parties' children. The court awarded parenting time to Becraft "at Snyder's discretion."

{¶ 6} Becraft raises three assignments of error on appeal. He claims that the court erred in ordering his parenting time to be at Snyder's discretion, in relying upon the GAL's report, and in granting his attorney's oral motion to withdraw. Before addressing Becraft's assigned errors, we will review the evidence presented at the hearing and the trial court's decision.

**Hearing**

{¶ 7} Becraft did not appear at the evidentiary hearing. Becraft's attorney stated that he had advised Becraft to appear, but Becraft indicated that he was unable to miss work to attend the hearing. The matter had been pending for several months, and the GAL had indicated that Becraft's involvement with him had been minimal, "if at all," which Becraft's attorney acknowledged. Becraft's attorney stated that he had advised Becraft to contact the GAL, and the GAL had occasionally reported to the attorney that Becraft failed to do so, whereupon counsel would remind Becraft to contact the GAL. Becraft's attorney stated that

his own communication with Becraft had also broken down, and he asked to withdraw from the case. Snyder did not object to the withdrawal on the condition that the hearing proceeded as scheduled. The court granted the motion to withdraw.

{¶ 8} Snyder was the sole witness at the hearing. She testified that Becraft did not consistently exercise his parenting time. Prior to her June 2023 motion to modify parenting time and reallocate parental rights, her communication with Becraft had been minimal; instead, she tended to communicate with Becraft's "[m]ultiple different significant others" regarding the children. She identified two of Becraft's previous wives with whom he has children and with whom she and the children have close relationships.

{¶ 9} Snyder stated that she filed her June motion after learning from Becraft's wife, Lynnette, of his alleged domestic violence and alcohol abuse issues and the pending criminal charges against him. In April 2023, Becraft had asked Snyder to come to his home, where the children were present, along with Lynnette, her parents, and his sister. Snyder attended, and she characterized the meeting as an alcohol intervention. At the time, Becraft acknowledged an issue with drinking, and he agreed that Lynnette would supervise his parenting time. On that occasion, Snyder observed the parties' son, who was 12 years old, driving Becraft's truck over beer cans in the yard as Becraft stood nearby.

{¶ 10} Snyder testified that Becraft did not stop drinking after the meeting. Her son told her that Becraft had been driving with the children after he had been drinking "a lot of beers" for approximately ten years.

{¶ 11} At the hearing in January 2025, Snyder testified that Becraft had last exercised parenting time in early June 2023, and he had last seen the children in person in October 2024, when Snyder and the mothers of his other children agreed that he could see the children in their Halloween costumes. Snyder stated that Becraft had not spoken to their

daughter between October 6 and November 28, 2024, but that Becraft spoke to their son more consistently. She facilitated phone calls and texting between Becraft and the children, but she expressed concern that Becraft occasionally told the children that it was her fault that they did not spend time with him.

**{¶ 12}** Snyder testified that she had cooperated with the GAL and reviewed his reports. She agreed with the GAL's recommendation that she be the legal custodian of the children and that Becraft's parenting time resume once his criminal matters were addressed and he had demonstrated an extended period of sobriety. Snyder stated that Becraft was then on probation; she did not believe that he was then sober or using the Soberlink device required by the court's October 2024 order.

**{¶ 13}** Snyder also testified that the GAL had recommended that Becraft meet his mental health needs and specifically address his occasional blackouts from alcohol consumption. She did not have any evidence that Becraft had completed a mental health assessment, and she did not believe that Becraft had completed the recommendations contained in the GAL's first report.

**{¶ 14}** Snyder testified that, in the second, more recent report, the GAL had recommended that Snyder have full custody and Becraft have parenting time at her discretion, and Snyder agreed with that recommendation. Snyder stated that she believed Becraft should still be required to demonstrate sobriety by means of Soberlink monitoring, at Becraft's cost, and to complete the mental health assessments recommended in the first report. She requested that shared parenting be terminated because she did not believe that Becraft would put forth the effort necessary for it to be successful. She further stated that she did not believe that Becraft would make decisions in the children's best interest due to his alcohol usage and mental health concerns. She asserted that she had made the

decisions for the children and provided for their care while the shared parenting plan was in place, without Becraft's involvement.

{¶ 15} Snyder stated that she did not have a criminal history, while Becraft had been convicted of trespassing and violation of a protection order, both felonies.   Snyder testified that she intended to maintain relationships with her children's two former stepmothers and their two children with Becraft.   She believed it to be in her children's best interest for Becraft to establish sobriety and a safe and stable environment; if he were to do so in the future, she would support a "phase-in approach for visitation" at that time, at her discretion.   Snyder stated it was difficult for the children to not see Becraft regularly; she provided counseling services to help them, and they had completed the recommended therapy.   According to Snyder, the children were healthy, had good grades, and participated in sports and activities at school.

## The Juvenile Court's Decision

{¶ 16} At the end of the hearing, the court granted Snyder's motion and orally found that, based on the evidence presented, it was in the children's best interest that the existing shared parenting arrangement be terminated and Snyder be designated their residential parent and legal custodian.   The court granted parenting time to Becraft at Snyder's discretion, with the understanding that he would need to demonstrate an extended period of sobriety and progress on his mental health needs.   It was significant to the court that Becraft had failed to attend the hearing, that he had not cooperated with the GAL, and that his relationship with his attorney had broken down to the point that counsel asked to (and was allowed to) withdraw.

{¶ 17} The court's written decision was filed on January 30, 2025.   It reiterated the court's findings at the hearing.   With respect to Becraft's parenting time, it stated, in relevant

part:

> Parenting Time:  Father shall have parenting time with the minor children at Mother's discretion.  Mother testified she will consider parenting time for Father once he abides by the recommendations of the GAL, specifically: Father to maintain compliance with the sentence imposed in his criminal convictions including the terms of his probation, Father to demonstrate a extended period of sobriety (including use of Sober Link, at Father's cost), Father to demonstrate he has addressed his mental health issues including treatment for his "black out periods" during which time Father consumes alcohol to excess.

**Standard of Review**

{¶ 18} Trial courts have broad discretion in allocating parental rights and responsibilities.  *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).  "In reviewing trial court decisions, appellate courts must . . . give deference to a trial court's findings, because ' "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *Schutz v. Schutz*, 2017-Ohio-695, ¶ 21 (2d Dist.), quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).

{¶ 19} " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83 (1985).  "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.*  "A decision is unreasonable if there is no sound

reasoning process that would support that decision." *Id.*

{¶ 20} R.C. 3109.04(E)(2)(c) provides that "[t]he court may terminate a prior final shared parenting decree that includes a shared parenting plan . . . upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children." R.C. Chapter 3109 grants the trial court broad authority to restrict parenting time. *Tyra v. Griffith,* 2025-Ohio-912, ¶ 40 (1st Dist.). Ohio's parenting-time statute instructs courts to "ensure the opportunity for both parents to have frequent and continuing contact with the child, unless frequent and continuing contact by either parent with the child would not be in the best interest of the child." *Id.* at ¶ 41, citing R.C. 3109.051(A).

{¶ 21} Contrary to R.C. 3109.04(E)(1)(a), which governs the modification of a prior decree allocating parental rights and responsibilities and requires a change of circumstances in order to do so, a trial court is not required to find a change in circumstances in order to modify a shared parenting plan; it need only consider the best interest of the child before terminating a shared-parenting plan and decree and designating one parent as the residential parent and legal custodian. *S.P. v. M.G.*, 2021-Ohio-1744, ¶ 108 (2d Dist.), quoting *Bruns v. Green,* 2020-Ohio-4787, ¶ 21. When a shared parenting plan is terminated, the court shall " 'issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under [R.C. 3109.04(A), (B), and (C)] . . . as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made.' " *Id.*, quoting R.C. 3109.04(E)(2)(d), citing *Bruns* at ¶ 14.

{¶ 22} R.C. 3109.04(F)(2) states:

In determining whether shared parenting is in the best interest of the children,

the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶ 23} R.C. 3109.04(F)(1) identifies the following non-exclusive best-interest factors to guide trial courts in reallocating parental rights:

(a) the wishes of the child's parents; (b) the wishes and concerns of the child; (c) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to the child's home, school, and community; (e) the mental and physical health of all persons involved in the situation; (f) the parent more likely to honor and facilitate court-approved parenting time rights or visitation; (g) whether either parent has failed to make all child support payments; (h) whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal

offense involving any act that resulted in a child being an abused child or a neglected child; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; and (j) whether either parent has established a residence, or is planning to establish a residence, outside this state.

*Sanchez v. Casiano*, 2022-Ohio-4179, ¶ 16 (2d Dist.), citing R.C. 3109.04(F)(1). "No single best-interest factor is controlling and the weight to be given to each factor is within a trial court's discretion." *Id.* at ¶ 22, citing *In re Z.C.*, 2023-Ohio-963, ¶ 34 (2d Dist.).

{¶ 24} "Although R.C. 3109.04 identifies various factors for a trial court to 'consider' when exercising its discretion and making a best-interest determination, the trial court was not obligated to recite or discuss any factors individually." *Palichat v. Palichat*, 2019-Ohio-1379, ¶ 28 (2d Dist.), citing *Hutchinson v. Hutchinson,* 2014-Ohio-4604, ¶ 32 (2d Dist.). "The critical issue is whether the record supports the trial court's conclusions and whether it explained its best-interest determination sufficiently." *Id.*, citing *Hutchinson* at ¶ 33-36.

**Assignments of Error and Analysis**

1. Award of Parenting Time at Snyder's Discretion

{¶ 25} In his first assignment of error, Becraft objects to the fact that the juvenile court gave Snyder discretion over his parenting time. The court's order arose in the context of Snyder's motion to terminate shared parenting and obtain residential parent status. Becraft did not request specific parenting time prior to the hearing, appear at the hearing, or cooperate with the GAL, as his attorney had urged him to do. Becraft had limited contact with the children in the months preceding the hearing, while Snyder facilitated contact between the children and Becraft and maintained the children's relationships with their half-

siblings and former stepmothers. Snyder acknowledged the importance of the children being able to visit with Becraft in a safe environment. Becraft had a felony record, was recently divorced amid allegations of domestic violence, and had an ongoing problem with alcohol, including having driven with the children after drinking. Snyder expressed concerns for Becraft's lack of stability with respect to the children's safety.

{¶ 26} The record demonstrates that the court fashioned its order based upon the exigencies of the situation and in the children's best interest; it did not abuse its discretion in doing so. Becraft may show compliance with the court's order and regain parenting time at Snyder's discretion, or he may move the court for further orders relating to parenting time in the future. Because the court acted within its broad discretion, Becraft's first assignment of error is overruled.

2.  Reliance on the GAL Report

{¶ 27} Becraft argues that the juvenile court should not have relied on Snyder's representations about what was contained in the GAL's reports. The reports themselves were not admitted at the hearing, and the GAL did not testify.

{¶ 28} Becraft agreed to the reappointment of the GAL but then failed to cooperate and communicate with him, to compensate him for his services, and to appear at the hearing. As such, he did not object to Snyder's testimony regarding the GAL's reports; moreover, he did not subpoena the GAL to appear and testify, as he could have done. The court noted Becraft's lack of cooperation with the GAL's investigation and Snyder's testimony that she was willing to resume Becraft's parenting time upon his compliance with the GAL's recommendations. Common sense dictates that it was in the best interest of the children that Becraft comply with probation in his criminal case, address his alcohol problem, and maintain his mental health. Becraft's second assignment of error is overruled.

### 3. Withdrawal of Becraft's Counsel

**{¶ 29}** Finally, Becraft argues that the trial court erred in granting his attorney's motion to withdraw on the day of the hearing. "Trial courts do have a duty 'to assure that a client shall not be prejudiced as a result of the withdrawal of counsel.' " (Citations omitted.) *Taylor v. Taylor*, 2013-Ohio-2341, ¶ 21 (2d Dist.), citing *Bennett v. Bennett,* 86 Ohio App.3d 343, 347 (8th Dist. 1993). We review a trial court's decision on a motion to withdraw for an abuse of discretion. *Guernsey Cty. Community Dev. Corp. v. Speedy,* 2024-Ohio-1039, ¶ 38 (5th Dist.), citing *State v. Williams*, 2003-Ohio-4396, ¶ 38.

**{¶ 30}** Our review of the record reflects that the juvenile court did not abuse its discretion in allowing counsel to withdraw after Becraft failed to appear at the hearing. This is especially so given Becraft's failure to cooperate with the GAL, as urged repeatedly by counsel. Counsel advised the court that communication with Becraft had broken down, which was evidenced by Becraft's failure to follow counsel's guidance. Under these circumstances, it is unclear how counsel for Becraft could have provided effective representation. Finally, Becraft waived his right to object to the withdrawal of counsel by failing to attend the hearing. Becraft's third assignment of error is overruled.

**{¶ 31}** Having overruled all of Becraft's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and HANSEMAN, J., concur.