[Cite as *Ziegler v. Ziegler*, 2022-Ohio-1527.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

| | | |
|---|---|---|
| ANGELA K. ZIEGLER | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-18 |
| | : | |
| v. | : | Trial Court Case No. 2019-DM-111 |
| | : | |
| TALBOT D. ZIEGLER | : | (Domestic Relations Appeal) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of May, 2022.

. . . . . . . . . . .

TYRONE P. BORGER, Atty. Reg. No. 0083274, 62 Remick Boulevard, Springboro, Ohio 45066
    Attorney for Plaintiff-Appellee

TALBOT D. ZIEGLER, 1795 Valleybrook Place, Dayton, Ohio 45459
    Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Appellant Talbot D. (aka Todd) Ziegler appeals from a judgment of the Greene County Common Pleas Court, Domestic Relations Division, which terminated the parties' shared parenting plan and designated his former wife, Angela K. Ziegler, as residential and legal custodian of the parties' minor children. For the reasons set forth below, we affirm.

## I.    Facts and Procedural Background

**{¶ 2}** The Zieglers were married in 2005. The marriage was terminated by dissolution in September 2015. The parties executed a shared parenting plan for their two minor children. In the agreement, Ms. Ziegler was named residential parent solely for school purposes. The agreement provided equal parenting time for both parents. The parties, who were earning the same salary at the time of the dissolution, agreed that neither would pay child support. The agreement further stated:

CHILDREN'S BIRTHDAYS

Both parents will make good faith efforts to hold birthday parties at neutral

locations or, if not possible, invite the other parent to attend any parties held

at their home.

**{¶ 3}** On June 23, 2020, Ms. Ziegler, through counsel, filed a motion for contempt arguing that Mr. Ziegler had willfully failed to "abide by the parties' agreement regarding parenting time with the minor children on their birthdays * * *." The motion also claimed that Mr. Ziegler had failed to pay for the children's extracurricular activities. Ms. Ziegler

sought termination of the shared parenting plan and asked that she be awarded sole legal custodial and residential parent status. In conjunction, the motion sought an award of child support.

{¶ 4} On July 1, 2020, attorney Aaron Hartley entered his appearance on behalf of Mr. Ziegler; however, he withdrew from representation on July 14, 2020. On September 14, 2020, Mr. Ziegler, acting pro se, filed a motion to dismiss in which he alleged that Ms. Ziegler and her attorney had "knowingly and intentionally engaged in fraud on the courts, and criminal fraud against Talbot Ziegler." On September 21, the court issued a pretrial order which, in pertinent part, set the matter for a hearing and appointed a guardian ad litem ("GAL") for the children. On October 5, 2020, attorney Kate Bowling entered her appearance as counsel for Mr. Ziegler. However, on October 9, 2020, she filed a motion to withdraw due to a breakdown in communication.

{¶ 5} On January 8, 2021, Mr. Ziegler, acting pro se, filed a motion to strike all of Ms. Ziegler's exhibits and witnesses. He also renewed his motion to dismiss, which was based upon his allegation that Ms. Ziegler had committed fraud by deceiving the court. Specifically, he alleged that Ms. Ziegler had fraudulently claimed that Mr. Ziegler had prevented her from attending a birthday party for one of their children. Finally, he asked the court for "sanctions, costs and all applicable damages[.]"

{¶ 6} A hearing was conducted on January 11, 2021 at which time Mr. Ziegler proceeded without counsel. At the beginning of the hearing, the magistrate determined that Ms. Ziegler's exhibits and witness list had been timely provided to Mr. Ziegler. The magistrate thus overruled the motion to strike. The magistrate then proceeded to hear

testimony from the GAL, Ms. Ziegler, and Mr. Ziegler.

{¶ 7} The GAL testified:

My recommendation would be to terminate shared parenting but to keep the parenting time the same. And the reason and thinking behind that was Angela and Todd's communication is terrible. And because their communication is so bad and so hostile, that's having a really negative effect on the girls. Angela has sort of been the one to carry on the routine parenting for the kids in terms of [doctor and therapy] appointments, * * * [and] making decisions about school. I saw there was some communication about whether or not they should go back online or go in school and Angela was the one to make that decision. Also pursuant to the shared parenting plan, if there was a disagreement, Angela was to be the decision maker or to have the final say. So it would be my hope that in eliminating communication about those types of things between Todd and Angela, that the girls will - - that will reduce some of the stress between the parents and then that will have a beneficial effect on the children because their parents' relationship will be better and so then their relationship with both of their parents can be better as well.

Tr. p. 20-21.

{¶ 8} Ms. Ziegler testified that she and Mr. Ziegler could not work together to co-parent the children. She testified that "over the course of the last year, a little over a year, every single decision involving the girls has been turned into an argument, a

controversy, you know, everything between Mr. Ziegler and I ends up being a power play." Tr. p. 43. Ms. Ziegler testified that their daughter, A.Z., was with her on A.Z.'s birthday; Ms. Ziegler asked Mr. Ziegler if he would like to have the girls for a few hours that evening or if he would like to come to her house the following day for the birthday party. Ms. Ziegler testified that the issue turned into an argument. She also testified, as will be set out more fully below, that she and Mr. Ziegler had engaged in an argument regarding the birthday of their other daughter, G.Z. According to Ms. Ziegler, Mr. Ziegler told her she could not attend G.Z.'s party. However, she was ultimately permitted to attend.

{¶ 9} Ms. Ziegler also testified she spoke to Mr. Ziegler regarding what she perceived as depression symptoms in one of the girls and that she raised the issue of engaging a therapist for the child. She testified that Mr. Ziegler disagreed and that he then proceeded to contact the school counselor about the issue. Mr. Ziegler believed the issue could be handled by the school counselor. He then unilaterally made appointments for the child with a psychologist and informed Ms. Ziegler that she needed to take the child to the appointments. Because the psychologist was on Ms. Ziegler's list of recommended providers, she took the child to all of the appointments.[1]

{¶ 10} Mr. Ziegler then presented his case. Once on the stand, he stated, "I don't have anything written as it relates to testimony. I simply want to enter Exhibit H into evidence to demonstrate that Mr. Strain, Ms. Ziegler's attorney, was notified on July 3rd of all the issues surrounding the events of [the birthday party on] April 1st, 2020." Tr. p.

[1] According to the GAL, the psychologist noted that although Mr. Ziegler made the initial appointment for the child, he had not been involved in any of the therapy sessions, despite the psychologist's encouragement to do so.

103. That exhibit consisted of emails from Mr. Ziegler to Strain claiming the contempt motion was fraudulent because Ms. Ziegler actually attended the birthday party at issue.

{¶ 11} At that point, counsel for Ms. Ziegler stated, "Your Honor, given that the only testimony presented by Mr. Ziegler has been an e-mail between he and myself, I don't believe there's much room for cross-examination on those issues[.]" Tr. p. 104-105. The magistrate then informed counsel he was not limited in questioning. The attorney then stated he believed he had put on sufficient evidence to support Ms. Ziegler's claims. The court then stated: "However, you are asking to be named residential parent, legal custodian. I at least need information in order to complete a child support worksheet if I choose to terminate shared parenting." Tr. at p. 102. The attorney then questioned Mr. Ziegler about the financial information that Mr. Ziegler had recently filed with the court.

{¶ 12} On May 5, 2021, the magistrate issued a decision granting the motion to terminate shared parenting. Ms. Ziegler was named sole legal custodian and residential parent of the children. The magistrate did not disturb the amount of parenting time exercised by Mr. Ziegler, but it did order Mr. Ziegler to pay child support. The magistrate overruled Ms. Ziegler's motion for contempt. The magistrate also overruled Mr. Ziegler's motion to dismiss as well as all requests for sanctions associated with it.

{¶ 13} On May 27, 2021, Mr. Ziegler retained counsel and filed a motion seeking leave to file late objections to the magistrate's decision. The motion was granted on June 2, 2021, and Mr. Ziegler was afforded seven days to file his objections. On June 4, 2021, Mr. Ziegler filed a notice of appeal. He filed his objections to the magistrate's decision on June 15, 2021. In his objections, Mr. Ziegler raised two issues related solely to the

calculation of the order of child support.

{¶ 14} Noting that Mr. Ziegler had filed an appeal prior to filing his objections, the trial court concluded that it lacked jurisdiction to rule on his objections to the magistrate's decision. Ms. Ziegler filed a motion in this court seeking to dismiss the appeal. On June 25, 2021, we overruled Ms. Ziegler's motion and remanded the matter to the trial court for further proceedings. In the order, we also stayed the appeal while the trial court considered the pending objections. On July 6, 2021, the trial court entered a judgment overruling Mr. Ziegler's objections because they were filed outside the time permitted by the order allowing the late filing of objections and adopted the decision of the magistrate.

{¶ 15} After the appellate briefs were filed, Mr. Ziegler's attorney filed a motion to withdraw as counsel. We granted the motion and entered an order giving Mr. Ziegler time to inform this court whether he wished to retain new counsel and file a new appellate brief, proceed pro se with the filed brief, or submit his own pro se brief. Ultimately, Mr. Ziegler filed a pro se appellate brief. This appeal is now properly before us.

## II.    Alleged Fraud Upon the Court

{¶ 16} Mr. Ziegler's first assignment of error states as follows:

A TRIAL COURT MISTAKES THE LAW WHEN IT FINDS, THEN IGNORES, FRAUD AGAINST A PARTY TO LITIGATION – AND FRAUD ON THE COURT.

{¶ 17} Throughout this proceeding, Mr. Ziegler has asserted that Ms. Ziegler committed fraud by filing a motion for contempt which contained a "manufactured * * *

story about how [she] was prohibited from attending the youngest daughter's birthday party." He further asserts that Ms. Ziegler's attorney committed fraud by failing to withdraw that allegation even after Mr. Ziegler had informed counsel of the falsity of that claim. Mr. Ziegler claims the magistrate correctly made a finding that Ms. Ziegler had committed fraud but erred by ignoring that finding in the disposition of the case.

{¶ 18} We begin by noting that, regardless of its timeliness, Mr. Ziegler did not raise this issue in his objections to the magistrate's decision. Civ.R. 53(D)(3)(b)(iv) provides, "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Thus, we are constrained to a plain error analysis with respect to this assignment of error. "In appeals of civil cases, the plain error doctrine is not favored" and should be applied only when the "error, to which no objection was made at the trial court, seriously affects the basic fairness * * *" of the proceeding. *Roemmich v. Roemmich*, 2d Dist. Greene No. 2007-CA-99, 2008-Ohio-6047, ¶ 10, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. With this standard in mind, we address the claim of fraud.

{¶ 19} As set forth above, the shared parenting agreement provided "both parents * * * will make good faith efforts to hold birthday parties at neutral locations or, if not possible, invite the other parent to attend any parties held at their home." However, as succinctly set forth in the report of the GAL, an issue arose concerning Ms. Ziegler's

attendance at a birthday party held at Mr. Ziegler's residence:

> Angela and Todd got into a significant argument on [G.Z.'s] 10th birthday (April 1st). * * * Angela believed that Todd was planning on taking the girls to Maryland in May which was during the stay-at-home orders and travel advisories. On [G.Z.'s] birthday[,] Angela and Todd spoke on the phone very early in the morning about the Maryland trip which ended with Todd hanging up on her. They then texted and Angela threatened that if he took them to Maryland that she would file an Amber Alert. During that exchange she referred to [the woman Todd was dating] as his "skanky ass girlfriend." This upset Todd and he told her she was no longer invited to [the] party. Todd blocked Angela from texting him, so Angela sent him an email apologizing for calling [the girlfriend] "skanky" and asked him to set aside their differences on [G.Z.'s] birthday. Todd did not feel that Angela's apology was good enough and continued to drag out the argument. There are multiple text messages and emails between Angela and Todd and [G.Z.] and her parents. [G.Z.] texted Todd that all she wanted was for her mommy to be at her party and Todd told [G.Z.] it was up to her Mother to make an appropriate apology. After an entire day of back and forth, Angela came to Todd's for [G.Z.'s] birthday and brought the food and cake.

{¶ 20} During the hearing, Ms. Ziegler testified to the above events and confirmed that Mr. Ziegler had told her she could not attend the party. She testified that, later in the day, she learned that Mr. Ziegler would not let her attend unless she brought a cake and

decorations and made dinner for everyone attending. She testified that she complied with Mr. Ziegler's demands and ultimately attended the party. Mr. Ziegler did not refute this testimony.

{¶ 21} Mr. Ziegler bases his claim of fraud upon the fact that Ms. Ziegler ultimately attended the party, which he contends refuted her claim that she was prohibited from attending. He also claims that the report of the GAL proved the fraud because the GAL found that Ms. Ziegler had ultimately attended the birthday party. Additionally, he asserts that the magistrate acknowledged the fraud by noting Ms. Ziegler's attendance at the party.

{¶ 22} Contrary to Mr. Ziegler's argument, the magistrate did not make a finding that Ms. Ziegler had committed fraud. Instead, the magistrate expressly stated that Mr. Ziegler's motion to dismiss (which was predicated upon the claim of fraud) was not well-taken and thus denied. Both the GAL and the magistrate noted that, even though Ms. Ziegler ultimately attended the birthday party, there was "unnecessary stress and conflict" leading up to her attendance. The magistrate also noted, "Father was more worried about controlling Mother than the effect the entire situation was having on the child on her birthday."

{¶ 23} We are unable to discern any merit in Mr. Ziegler's claim of fraud. First, Ms. Ziegler did not allege she did not attend the birthday party. Instead, she alleged Mr. Ziegler had failed to abide by their agreement regarding birthday parties. Second, the record supports a finding that Mr. Ziegler's actions impeded Ms. Ziegler's right to attend the birthday party. There is evidence in the record that the parties engaged in an

argument on the telephone at approximately 7:30 a.m. on the day of the party. At that time, Mr. Ziegler told Ms. Ziegler she could not attend. Ms. Ziegler then sent Mr. Ziegler an e-mail apologizing for her comment about his girlfriend. Despite e-mailing and texting throughout the day, Mr. Ziegler refused to agree that Ms. Ziegler could attend. At approximately 3:40 p.m., G.Z. texted Ms. Ziegler and informed her that Mr. Ziegler had forgiven her and she could attend. However, according to the evidence, he also dictated that she could not attend unless she brought a cake and decorations and cooked dinner for those attending the party.

{¶ 24} The record supports a finding that Mr. Ziegler did attempt to interfere with Ms. Ziegler's rights under the shared parenting agreement. Thus, we find no error, let alone plain error, in the magistrate's decision dismissing Mr. Ziegler's fraud claim. Accordingly, the first assignment of error is overruled.

### III.  Alleged Lack of Standing

{¶ 25} Mr. Ziegler's second assignment of error states as follows:

A TRIAL COURT MISTAKES THE LAW WHEN IT ISSUES A STANDARD JUDGMENT AFTER PERMITTING FRAUD TO PREEMPT STANDING, JURISDICITION [SIC] AND JUSTICIBILITY [SIC].

{¶ 26} Although somewhat convoluted, Mr. Ziegler asserts that Ms. Ziegler lacked standing to raise -- and the trial court lacked subject matter jurisdiction to decide -- the post-decree issues set forth in Ms. Ziegler's motion. In support, he argues that Ms. Ziegler's alleged fraudulent pleading related to the birthday party "preempt[ed] and

corrode[d] the prudential doctrines of standing, jurisdiction and justiciability."

{¶ 27} Given our disposition of the first assignment of error finding no merit in the claim of fraud, we conclude this assignment of error is without merit. Accordingly, the second assignment of error is overruled.

### IV. Best Interest Analysis

{¶ 28} The third assignment of error asserted by Mr. Ziegler states:

A TRIAL COURT MISTAKES THE LAW IN *BRUNS* CASES WHEN A JUDGMENT FAILS TO ENGAGE THE "BEST INTERESTS" ANALYSIS MANDATED BY THE OHIO GENERAL ASSEMBLY AND OHIO SUPREME COURT.

{¶ 29} Mr. Ziegler contends the trial court erred by terminating the parties' shared parenting agreement without first considering the statutory factors relating to the children's best interest. He also claims the magistrate's conclusions regarding the best interest factors were erroneous and incorrect.

{¶ 30} A trial court has broad discretion in custody proceedings and its decision will not be overturned absent an abuse of that discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 421, 674 N.E.2d 1159 (1997). An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). However, because Mr. Ziegler did not raise any objections to the magistrate's findings regarding termination of shared parenting or the reallocation or parental rights and responsibilities, we review these issues under a

plain error analysis.

{¶ 31} Termination of a shared parenting plan is governed by R.C. 3109.04(E)(2)(c), which provides, "[t]he court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children." When determining whether shared parenting is in the best interest of the children, R.C. 3109.04(F)(2) states that "the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section," and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶ 32} In the decision terminating the shared parenting plan, the magistrate stated:

It is very clear in observing the parties during the trial, that there is a fair amount of contemptuous feelings towards one another. Father was

observed being very snarky and antagonistic to Mother during the hearing. Mother clearly has personal feelings regarding Father's girlfriend Joanna. The GAL found their communication and interactions together to be hostile at times and was directly affecting the children. The Court finds the parties have very little ability at the present to cooperate, effectively communicate, or come to joint decisions which are in the best interest of the children. [Thus,] the [magistrate] finds that Shared Parenting is no longer in the best interests of the children[.]

{¶ 33} This court has previously stated that "the inability of parents to effectively cooperate or communicate constitutes grounds for terminating a shared parenting decree." *Harrison v. Harrison*, 2d Dist. Clark No. 2018-CA-105, 2019-Ohio-2835, ¶ 9, citing *Massengill v. Massengill*, 2d Dist. Montgomery No. 18610, 2001 WL 283001, *5 (Mar. 23, 2001). *See also*, *A.S. v. D.G.*, 12th Dist. Clinton No. 2006-05-017, 2007-Ohio-1556, ¶ 52-54 (affirming the trial court's decision to terminate a shared parenting decree because the parents could no longer cooperate and communicate with each other regarding the child); *Milner v. Milner*, 10th Dist. Franklin No. 99AP-13, 1999 WL 1139965, *4 (Dec. 14, 1999) (concluding that the trial court did not abuse its discretion in terminating the shared parenting decree because "shared parenting is not appropriate where the parents cannot communicate, cooperate and make joint decisions").

{¶ 34} A review of the record demonstrates evidence sufficient to support the magistrate's decision to terminate shared parenting. The GAL recommended the termination, and there was evidence to support a finding that the parties were unable to

effectively communicate or cooperate with each other regarding the children. The record further showed this inability to communicate had had a negative impact upon the children. Therefore, we cannot say that the trial court abused its discretion in affirming the magistrate's decision.

{¶ 35} Next, Mr. Ziegler disputes the magistrate's best interest findings as to the decision awarding sole residential and legal custody to Ms. Ziegler.

{¶ 36} R.C. 3109.04(F)(1) provides:

In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted

in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 37} The magistrate noted that Ms. Ziegler wished to terminate shared parenting while Mr. Ziegler wanted to maintain the status quo. The magistrate did not interview the children but noted that they had informed the GAL that they did not want the parenting time schedule to change. The magistrate also found that the children have a strong, loving relationship with both parents. The magistrate found that the children had suffered emotional distress by reason of the divorce and the parents' interactions with each other. The magistrate concluded Mr. Ziegler was likely to allow his feelings toward Ms. Ziegler to interfere with her parenting time. Finally, the magistrate noted that Ms. Ziegler has been the primary caretaker for the children since the divorce. Based upon these findings, the magistrate concluded that it was in the best interest of the children to designate Ms. Ziegler as the legal and residential custodian.

{¶ 38} The record supports the magistrate's findings of fact. Therefore, because we cannot conclude the court abused its discretion, we conclude Mr. Ziegler has not demonstrated plain error regarding the decisions to terminate the shared parenting agreement and to designate Ms. Ziegler as the sole legal and residential custodian. Accordingly, the third assignment of error is overruled.

## V.      Miscellaneous

{¶ 39} Mr. Ziegler's fourth, fifth and sixth assignments of error are "consolidated."

{¶ 40} Mr. Ziegler first asserts the magistrate abused her discretion by "directing trial counsel when and how to introduce evidence necessary for an award of the relief sought."   Specifically, he refers to the statement of the magistrate directing Ms. Ziegler's to ask questions of Mr. Ziegler regarding his finances.

{¶ 41} We note that Mr. Ziegler filed an updated financial affidavit with the court. Therefore, all of the evidence adduced in the cross-examination of Mr. Ziegler was already part of the court record.   Thus, even if the magistrate did act improperly, such error was harmless.

{¶ 42} Next, Mr. Ziegler argues that "the doctrine of prosecutorial vindictiveness ought to be applicable where a family law attorney engages in fraud and acts as a prosecutor in a criminal contempt action against a non-moving party."   Again, we conclude that Mr. Ziegler has failed to demonstrate that either Ms. Zeigler or her attorney committed fraud.   Thus, this argument lacks merit.

{¶ 43} Finally, Mr. Ziegler claims the trial court erred by "awarding new child support in such case where malicious and fraudulent actions by the moving parent materially breach[ed] a shared parenting agreement contra to a child's best interests." Mr. Ziegler asserts the magistrate erred by ordering him to pay child support given that Ms. Ziegler's actions were fraudulent and malicious.   Again, we found no merit to the claim that Ms. Ziegler acted fraudulently.   Therefore, this argument lacks merit.

**{¶ 44}** We also note that the record supports a finding that Ms. Ziegler was unemployed for a period following the divorce and that her income was $80,000 at the time of the hearing whereas Mr. Ziegler's income was $120,000. The magistrate's child support calculation was appropriately based upon the child support worksheet and properly provided a downward deviation in Mr. Ziegler's support obligation due to the amount of parenting time he exercised. We review child support decisions under an abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). We find no abuse of discretion.

**{¶ 45}** The fourth, fifth and sixth assignments of error are overruled.

## VI. Conclusion

**{¶ 46}** All of Mr. Ziegler's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Tyrone P. Borger
Talbot D. Ziegler
Hon. Cynthia G. Martin