[Cite as *Maxe v. Rosa*, 2025-Ohio-5325.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

JAMIL B. MAXE                             :
                                          :    C.A. No. 30466
        Appellant                         :
                                          :    Trial Court Case No. 2015 UJ 00013
v.                                        :
                                          :    (Appeal from Common Pleas Court-
LISA ROSA                                 :    Domestic Relations)
                                          :
        Appellee                          :    **FINAL JUDGMENT ENTRY &**
                                          :    **OPINION**


. . . . . . . . . . .

Pursuant to the opinion of this court rendered on November 26, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.


For the court,


_____
ROBERT G. HANSEMAN, JUDGE

EPLEY, P.J., and LEWIS, J., concur.

H. STEVEN HOBBS, Attorney for Appellant
LISA ROSA, Appellee, Pro Se

HANSEMAN, J.

{¶ 1} Jamil B. Maxe appeals from a judgment of the Montgomery County Common Pleas Court, Domestic Relations Division, that terminated a shared-parenting plan he had with Lisa Rosa, designated Rosa as the legal custodian and residential parent of their minor child, and ordered him to pay Rosa $6,724 in work-related childcare expenses. For the reasons outlined below, the judgment of the trial court is affirmed.

**Facts and Course of Proceedings**

{¶ 2} Maxe and Rosa were married and had one biological child together. In 2014, they were granted a divorce. On October 5, 2021, the trial court approved a decree of shared parenting that included a shared-parenting plan. The shared-parenting plan set forth various parental rights and responsibilities, including but not limited to, equal parenting time (alternating weekly) and equal payment of work-related childcare expenses.

{¶ 3} Shortly after the shared-parenting plan was approved by the trial court, Rosa obtained a domestic violence civil protection order ("DVCPO") against Maxe. The DVCPO remains in effect until October 12, 2026. *See* Montgomery County Domestic Relations Court Case No. 2021 DV 01705. The DVCPO prohibits the parties from contacting one another and orders them to use the co-parenting application AppClose to manage their child-related matters.

{¶ 4} In 2024, Rosa filed several motions seeking Maxe to show cause for why he should not be held in contempt of court for failing to (1) allow her the parenting time set forth

2

in the shared-parenting plan; (2) submit to a court-ordered drug screening; (3) pay his share of worked-related childcare expenses; and (4) communicate with her through AppClose on child-related matters. The trial court dismissed the motion to show cause concerning the AppClose application given that the order to use the application was issued in the DVCPO case. Rosa refiled the motion in the DVCPO case, and Maxe was held in contempt for failing to use the application or to exchange their child in accordance with the procedure set forth in the DVCPO.

{¶ 5} On May 9, 2024, Rosa filed an ex parte motion for temporary legal custody of the parties' child and for suspension of Maxe's parenting time due to Maxe testing positive for cocaine following a court-ordered drug test. The trial court granted the motion, and the parties entered into an agreed order that permitted Maxe to have supervised parenting time every Sunday from noon to 6 p.m. at his mother's residence. Maxe was also permitted to have telephonic or video communication with the child every Tuesday and Thursday on AppClose.

{¶ 6} Two-and-a-half months after the agreed order, Rosa filed a motion to terminate the parties' shared-parenting plan and to reallocate parental rights and responsibilities. Rosa requested the trial court to designate her as the sole legal custodian and residential parent on grounds that the parties were no longer able to effectively communicate or cooperate with each other. All of Rosa's motions were set for a hearing on October 17, 2024. During the hearing, both Rosa and Maxe testified before a magistrate and presented several exhibits. The following information was presented during the hearing.

{¶ 7} Maxe had refused to communicate through AppClose with Rosa, and so Rosa communicated through Maxe's mother on the application. Maxe acknowledged that he had

been reluctant to have any communication with Rosa since she filed the DVCPO against him.

{¶ 8} Maxe had been diagnosed with cocaine use disorder in 2022, and he failed to comply with multiple court orders for drug testing. Maxe acknowledged using cocaine in the past, and he had tested positive for cocaine on May 6, 2024. Maxe, however, claimed that he had been abstaining from drugs and was seeking treatment through the Dayton VA Medical Center. Although Maxe accused Rosa of abusing drugs, Rosa denied using any illegal substances, had submitted to multiple court-ordered drug tests, and had consistently tested negative for drugs.

{¶ 9} The parties' child had been diagnosed with attention deficit/hyperactivity disorder, oppositional defiant disorder, and anxiety. Rosa was the primary caretaker regarding their child's medical needs and appointments. Maxe did not like the child's doctor and disputed the child's diagnosis. The child took medication, and Maxe did not communicate with Rosa regarding the medication. Maxe did not always administer the child's medication on schedule. Rosa claimed that Maxe's mother administered the child's medication when the child was with Maxe. Rosa also claimed that Maxes's mother had administered expired medication to the child at the wrong time and in the wrong dosage.

{¶ 10} Rosa made the schooling decisions for the child, met with the child's teachers regarding the child's disabilities and 504 plan, helped the child with schoolwork, and attended school events. Maxe did not communicate with the child's teachers or meet with the teachers despite being accommodated with separate meetings. School records indicated that the child's grades and school attendance improved after Maxe's parenting time was reduced. At the time of the hearing, Rosa was paying tuition to Huber Heights School District so that the child could attend school there, as Rosa planned to relocate to

4

that district. The tuition arrangement was made due to Rosa being considered homeless while she was in between housing.

{¶ 11} Maxe acknowledged that he was aware of his obligation to pay for half of any work-related childcare expenses. Maxe, however, had not made any payments toward those expenses. Rosa incurred $13,448 in work-related childcare expenses between 2021 and 2024. Rosa claimed that she had advised Maxe's mother about the work-related childcare expenses and that Maxe knew these expenses were being incurred. Rosa admitted that she had not directly sent receipts for the expenses over AppClose. Instead, she had tendered receipts for the outstanding expenses to Maxe's attorney on March 28, 2024.

{¶ 12} On multiple occasions, Maxe had failed to show up for parenting time exchanges and had attempted to unilaterally change the parenting schedule to keep the child. Besides Rosa's child with Maxe, she has adult children. Rosa acknowledged that she has a conviction for child endangering from ten years ago.

{¶ 13} Considering the testimony and evidence presented at the hearing, the magistrate issued a decision finding that both Maxe and Rosa had struggled with co-parenting and cooperatively working together to manage their child's problems. The magistrate found that Maxe made the situation more difficult by refusing or limiting communications with Rosa and the child's teachers and by having conflict with the child's doctor. The magistrate further found that Maxe had continually struggled with substance abuse while Rosa had not abused drugs and passed all drug tests.

{¶ 14} The magistrate concluded that "limping along with a shared parenting plan where the parties have significant conflict and poor communications, and where one parent is dealing with limited parenting time due to drug abuse issues, would not be in the child's best interest." Magistrate's Decision (Jan. 3, 2025), p. 8. The magistrate terminated the

5

shared-parenting plan and designated Rosa as the sole legal custodian and residential parent for the child. The magistrate found Maxe in contempt of court for failing to pay his share of the work-related childcare expenses and ordered him to pay Rosa $6,724 for the incurred expenses.

{¶ 15} Maxe filed timely objections to the magistrate's decision. After conducting a de novo review of the record, the trial court issued a decision that set forth its own findings of fact and addressed each of Maxe's objections. The trial court indicated that it agreed with the magistrate's findings and conclusions of law and found that it was in the child's best interest to terminate the shared-parenting plan and to designate Rosa as the sole legal custodian and residential parent. The trial court also agreed that Maxe was in contempt of court for failing to pay his share of the work-related childcare expenses. The trial court overruled Maxe's objections, terminated the shared-parenting plan, designated Rosa as legal custodian and residential parent, and ordered Maxe to pay Rosa $6,724 in work-related childcare expenses.

{¶ 16} Maxe now appeals from that judgment and raises two assignments of error for review.

**First Assignment of Error**

{¶ 17} Under his first assignment of error, Maxe claims that the trial court erred by terminating the parties' shared-parenting plan and by designating Rosa as the legal custodian and residential parent. We disagree.

*Standard of Review*

{¶ 18} "Trial courts have broad discretion in allocating parental rights and responsibilities." *Becraft v. Snyder*, 2025-Ohio-2164, ¶ 18 (2d Dist.), citing *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "Absent an abuse of that discretion, a reviewing court will affirm

the custody determination of the trial court." *Miller v. Hunter*, 2015-Ohio-3377, ¶ 8 (2d Dist.), citing *Miller*, 37 Ohio St.3d at 74. "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83 (1985). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id*. "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id*. "In reviewing an abuse of discretion claim, an appellate court should be guided by a presumption that the trial court's findings were correct." *Meyer v. Anderson*, 2002 WL 1251449, *2 (2d Dist. June 7, 2002), citing *Miller, 37 Ohio St.3d at 71.

*Law Governing Termination of Shared-Parenting Plan*

{¶ 19} "R.C. 3109.04 sets forth the procedures to be followed if either a parent or the trial court finds it necessary to make changes to a shared-parenting decree or plan." *In re E.M.*, 2025-Ohio-1810, ¶ 12 (2d Dist.). "Under R.C. 3109.04(E)(2)(c), a court may terminate a prior final shared-parenting decree that includes a shared parenting plan upon the request of one or both parents or whenever it determines that shared parenting is not in the best interest of the child." *Id*. at ¶ 15. Therefore, the court "need only consider the best interest of the child before terminating a shared-parenting plan and decree and designating one parent as the residential parent and legal custodian." *Becraft* at ¶ 21, citing *S.P. v. M.G.*, 2021-Ohio-1744, ¶ 108 (2d Dist.), quoting *Bruns v. Green*, 2020-Ohio-4787, ¶ 21.

{¶ 20} R.C. 3109.04(F)(2) lists several factors for courts to consider when determining whether it is in a child's best interest to terminate a shared-parenting plan. Those factors include:

7

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

R.C. 3109.04(F)(2)(a)-(e).

{¶ 21} The court must also consider the factors listed under R.C. 3109.04(F)(1), which include:

(a) The wishes of the child's parents regarding the child's care;

(b) The wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation;

(g) Whether either parent has failed to make support payments;

(h) Whether either parent has been convicted of a criminal offense involving an act that resulted in a child being labeled an abused or neglected child; whether either parent or household member has been convicted of a sexually

8

oriented offense involving a victim who was a member of the household that is subject to this proceeding; whether the parent or household member has been convicted of an offense of violence against a household member;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; and

(j) Whether either parent has established, or plans to establish a residence outside this state.

R.C. 3109.04(F)(1)(a)-(j).

{¶ 22} "Although R.C. 3109.04 identifies various factors for a trial court to 'consider' when exercising its discretion and making a best-interest determination, the trial court [is] not obligated to recite or discuss any factors individually." *Palichat v. Palichat*, 2019-Ohio-1379, ¶ 28 (2d Dist.), citing *Hutchinson v. Hutchinson*, 2014-Ohio-4604, ¶ 32 (2d Dist.) ("'it is not necessary for the court to set forth its analysis as to each factor in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence'"), quoting *Bunten v. Bunten,* 126 Ohio App.3d 443, 447 (3d Dist. 1998). Therefore, "the trial court is not required to enumerate or follow any particular best interest factors." *In re Bell*, 2005-Ohio-6603, ¶ 55 (7th Dist.). "The critical issue is whether the record supports the trial court's conclusions and whether it explained its best-interest determination sufficiently." *Palichat* at ¶ 28, citing *Hutchinson* at ¶ 33-36.

{¶ 23} This court has recognized that "'the inability of parents to effectively cooperate or communicate constitutes grounds for terminating a shared parenting decree.'" *Ziegler v. Ziegler*, 2022-Ohio-1527, ¶ 33 (2d Dist.), quoting *Harrison v. Harrison*, 2019-Ohio-2835, ¶ 9 (2d Dist.). *See also Milner v. Milner*, 1999 WL 1139965, *4 (10th Dist. Dec. 14, 1999)

9

(concluding that the trial court did not abuse its discretion in terminating the shared-parenting decree because "shared parenting is not appropriate where the parents cannot communicate, cooperate and make joint decisions").

*Analysis*

{¶ 24} In this case, the magistrate's decision contains several factual findings that align with the best-interest analysis set forth in R.C. 3109.04. The magistrate found that both Maxe and Rosa struggled with co-parenting and cooperatively working together to manage their child's problems. The magistrate also found that Maxe made the situation more difficult by refusing or limiting communications with Rosa and the child's teachers and by having conflict with the child's doctor. In addition, the magistrate found that Maxe had continued to struggle with substance abuse while Rosa had not abused drugs and had passed all drug tests. In light of these findings, the magistrate concluded that "limping along with a shared parenting plan where the parties have significant conflict and poor communications, and where one parent is dealing with limited parenting time due to drug abuse issues, would not be in the child's best interest." Magistrate's Decision (Jan. 3, 2025), p. 8.

{¶ 25} The trial conducted a de novo review of the evidence and statutory factors and agreed that: "it was in the best interest of the child for [Rosa] to be named sole legal custodian." Final Judgment, p. 10. The trial court noted no error or defect in the magistrate's decision and found sufficient support for the magistrate's conclusions of law. In arriving at its best-interest determination, the trial court agreed with and adopted the magistrate's findings.

{¶ 26} Maxe challenges the trial court's best-interest determination based on video evidence that he claims shows Rosa with "an ongoing drug consumption issue." According to Maxe, the trial court "glossed over" this video evidence when making its best-interest

10

determination. Rosa acknowledged that the video in question shows her acting impaired, i.e., slurring and being unsteady on her feet, while attempting to pick up the parties' child from Maxe's mother's residence on an unknown date. Rosa testified that Maxe's mother had given her some pain pills and that the video depicted her under the effect of those pills. Rosa testified that she had taken one pill the previous night before bed and was unaware of its effects because she was sleeping. Rosa testified that she took another pill the following day when the video was recorded. Rosa recognized that she was impaired on the video and attributed the impairment to the pain pills. Rosa, however, denied having a history of abusing drugs or alcohol.

{¶ 27} Upon review, we find that it was for the trial court to assign the weight that it deemed appropriate to the video evidence at issue. Given Rosa's testimony explaining why she was impaired and her consistent negative drug test results, it was not unreasonable for the trial court to attribute little weight to the video evidence and to reject Maxe's claim that Rosa had an ongoing drug use issue.

{¶ 28} Maxe next challenges the trial court's best-interest determination by claiming that the magistrate unreasonably found that he had a "long history with cocaine." The evidence established that Maxe was diagnosed with cocaine use disorder in 2022, avoided court-ordered drug tests, and tested positive for cocaine on May 6, 2024. Based on this evidence, it was not unreasonable for the magistrate to find that Maxe had a long history with cocaine. Although Maxe may disagree with how the magistrate described the duration of his cocaine use, it was a discretionary finding that was based on the evidence presented at the hearing. Accordingly, the finding was not unreasonable.

{¶ 29} Maxe also challenges the trial court's best-interest determination by asserting that the magistrate unreasonably found that he was not diligent in assisting with the child's

11

schoolwork. The evidence demonstrated that the parties' child would often not complete assignments while staying with Maxe and that the child's grades and attendance at school improved after Maxe's parenting time was reduced. It was not unreasonable for the magistrate to find that Maxe was not diligent in assisting with the child's schoolwork.

{¶ 30} Overall, the magistrate's findings were reasonable, and they support the trial court's conclusion that it was in the child's best interest to terminate the shared-parenting plan and to designate Rosa as the legal custodian and residential parent. The record established that Maxe had a substance abuse problem, while Rosa did not. The record also established that Maxe continually failed to communicate with Rosa over AppClose, which made co-parenting difficult. The lack of communication caused the parties to struggle with managing their child's mental health issues and schoolwork. It also made exchanging the child between the parties difficult. As previously discussed, "'the inability of parents to effectively cooperate or communicate constitutes grounds for terminating a shared parenting decree.'" *Ziegler*, 2022-Ohio-1527 at ¶ 33 (2d Dist.), quoting *Harrison*, 2019-Ohio-2835 at ¶ 9 (2d Dist.). The trial court did not abuse its discretion by ordering termination of the shared-parenting plan and designating Rosa as the legal custodian and residential parent.

{¶ 31} Maxe's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 32} Under his second assignment of error, Maxe contends that the trial court erred by ordering him to pay $6,724 in work-related childcare expenses that Rosa incurred between 2021 and 2024. In so arguing, Maxe is not disputing the amount that he was ordered to pay or that he had an obligation to pay the expenses. Rather, Maxe claims that under the doctrine of laches, the trial court should not have ordered him to pay the expenses because Rosa waited approximately three years before providing him an itemized statement

of the expenses. Maxe also argues that Rosa failed to comply with former Mont. D.R. Rule 4.42(E) by failing to include an itemized statement with the motion to show cause that she filed in relation to the unpaid expenses.

*Doctrine of Laches*

{¶ 33} "'Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. It signifies delay independent of limitations in statutes. It is lodged principally in equity jurisprudence.'" *Connin v. Bailey*, 15 Ohio St.3d 34, 35 (1984), quoting *Smith v. Smith*, 107 Ohio App. 440, 443-444 (8th Dist. 1957). "'Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim.'" *Id*. at 35-36, quoting *Smith v. Smith*, 168 Ohio St. 447 (1959), paragraph three of the syllabus; *accord Kinney v. Mathias*, 10 Ohio St.3d 72, 74 (1984).

{¶ 34} For laches claims, this court has recognized that "'showing "material prejudice" is difficult.'" *In re Buechter*, 2007-Ohio-317, ¶ 9 (2d Dist.), quoting *In re O'Herron,* 2000 WL 896376, *4 (2d Dist. July 7, 2000). "The mere inconvenience of having to meet an existing obligation imposed . . . by an order or judgment of a court of record at a time later than that specified in such . . . order cannot be called material prejudice." *Smith,* 168 Ohio St. at 457; *accord Connin* at 37. In *Wright v. Oliver,* 35 Ohio St.3d 10 (1988), the Supreme Court of Ohio held that a father's incurrence of obligations that he would not have undertaken if he had been held responsible for the child's support did not materially prejudice him. *Id*. at 12.

{¶ 35} The "'"[d]etermination of what constitutes laches is one of those matters in which the sound judicial discretion of the court plays a relatively important part, because no universal rules can be formulated, but the question is predominantly one of fact, to be

13

resolved in each case according to its special circumstances"'" *Coder v. Coder*, 1996 WL 257215, *3 (2d Dist. May 17, 1996), quoting *Bitonte v. Tiffin Savings Bank*, 65 Ohio App.3d 734, 739 (1989), quoting 66 Ohio Jur. 3d, Limitations and Laches, § 222 (1986). Therefore, "[t]he application of the defense of laches is within the discretion of the trial court and will not be overturned absent an abuse of discretion." *Lelak v. Lelak*, 2021-Ohio-519, ¶ 31 (2d Dist.), citing *Thomas v. Thomas*, 2004-Ohio-2136, ¶ 14 (10th Dist.).

{¶ 36} Maxe claims that the doctrine of laches prohibits Rosa from seeking payment for work-related childcare expenses that she incurred between 2021 and 2024. According to Maxe, the doctrine of laches is applicable because Rosa's delay in providing him with an itemized statement of the expenses prevented him from paying the expenses as they were incurred and from obtaining a tax credit for the expenses. Maxe's argument, however, assumes that he would have paid the expenses upon receiving a statement. His assumption is overly speculative because he did not pay the expenses even after Rosa hand-delivered an itemized statement to his attorney on March 28, 2024.

{¶ 37} As a further matter, we find it significant that Maxe does not dispute the fact that he was aware the shared-parenting plan obligated him to pay for half of any work-related childcare expenses within 30 days of receipt of the expenses. Although Maxe testified that he was unaware that any work-related childcare expenses were actually being incurred, the trial court did not credit that portion of Maxe's testimony. Instead, the trial court determined from the evidence that Maxe knew there were work-related childcare expenses being incurred. This determination was reasonable because Rosa testified that she had informed Maxe and his mother about the work-related childcare via AppClose, which Maxe had failed to utilize. Rosa, though, admitted that she had not directly sent Maxe or his mother the itemized statements over AppClose.

14

**{¶ 38}** Regardless, because Maxe knew that work-related childcare expenses were being incurred, he could have made efforts to determine what was owed by contacting Rosa through AppClose or by having his mother or attorney contact Rosa to get the necessary information to make his payments. Yet Maxe refused to use any approved means of contact to determine what he owed, thus making the delay in receiving that information primarily attributable to him. We find that Maxe's failure to pay the work-related childcare expenses and his inability to claim a tax credit for those expenses were largely due to his own willful neglect. Indeed, the shared-parenting agreement had not set forth a time frame for when notice of the expenses should have been provided. Under these circumstances, it cannot be said that Maxe suffered material prejudice. The trial court did not abuse its discretion by rejecting Maxe's claim of laches.

*Former Mont. D.R. Rule 4.42(E)*

**{¶ 39}** Maxe also argues that he should not have been required to pay the work-related childcare expenses because Rosa did not include an itemized statement of the expenses with the motion to show cause that she filed in relation to the unpaid expenses. Maxe claims that the trial court's local rules required the itemized statement to be attached to the motion. Specifically, Maxe cites former Mont. D.R. Rule 4.42, which governed motions to show cause and stated the following at section (E):[1]

> Medical Bills or Other Support Obligations. When the motion alleges
>
> nonpayment of medical/dental bills or support other than periodic payments

---

[1] The current version of the local rules became effective on June 1, 2025, which was after Rosa filed her motion to show cause. Under the current version of the rules, motions to show cause are governed by Rule 3.5(B). Section (4) of that rule states that: "Medical Bills or Other Support Obligations. When the motion alleges nonpayment of medical/dental/psychological bills, the movant must bring to the hearing an itemization of the bills/any insurance coverage/payments using Form 4 from the Appendix." Mont. D.R. Rule 3.5(B)(4).

(i.e. private school tuition), the motion shall include an itemization of the bills – as an attachment and shall state whether a demand for payment has been made. [Use Appendix, Form 15 for all healthcare expense requests. Provide a copy to the opposing party and bring the original to the hearing.]

**{¶ 40}** Upon review, we are not persuaded by Maxe's argument that Rosa's failure to comply with former Mont. D.R. Rule 4.42(E) precluded the trial court from ordering him to pay his share of the work-related childcare expenses. "Local rules are of the court's own making, generally administrative in nature, designed to facilitate case management and provide guidelines for orderly case administration, and do not involve substantive principles of law or implicate constitutional rights." (Citation omitted.) *Holbrook v. Holbrook*, 2018-Ohio-2360, ¶ 17 (12th Dist.), citing *Smith v. Conley*, 2006-Ohio-2035, ¶ 9. "'[C]ourts are to be given latitude in following their own local rules; the enforcement of rules of court is held to be within the sound discretion of the court.'" *In re T.W.*, 2007-Ohio-1441, ¶ 39 (8th Dist.), quoting *Ciokajlo v. Ciokajlo*, 1982 WL 8647, *2 (1st Dist. July 28, 1982), citing *Hanes v. Block*, 78 Ohio App. 394 (2d Dist. 1945), and *Myers v. Duibley*, 94 Ohio App. 228 (2d Dist. 1952); *accord In re I.L.J.*, 2020-Ohio-5434, ¶ 20 (8th Dist.). "Accordingly, there is no error when, in its sound discretion, the trial court decides that the peculiar circumstances of a case require deviation from its own rules." *Holbrook* at ¶ 17, citing *Kranz v. Kranz*, 2013-Ohio-1113, ¶ 17 (12th Dist.).

**{¶ 41}** In this case, the trial court had discretion to order Maxe to pay his share of the work-related childcare expenses despite Rosa's failure to comply with former Mont. D.R. Rule 4.42(E). Under the circumstances of this case, we do not find that the trial court abused its discretion. The record indicates that on March 28, 2024, Rosa provided Maxe's attorney with an itemized statement of the work-related childcare expenses that had been incurred

16

between 2021 and 2024 and made a demand for Maxe to pay his share of the expenses. Rosa did this well before she filed her motion to show cause on May 9, 2024. Therefore, although Rosa failed to include the itemized statement with her motion to show cause as required by former Mont. D.R. Rule 4.42(E), the record indicates that Maxe was given ample notice of the expenses that had been incurred. Furthermore, Rosa presented the itemized statement at the hearing on the matter.

{¶ 42} Maxe's second assignment of error is overruled.

## Conclusion

{¶ 43} Having overruled Maxe's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J., and LEWIS, J., concur.

17